# EXHIBIT J

Stephan C. Dean and Liza Dean
37187 Bankside Drive #2
Cathedral City, CA 92234
323-314-9692
Surefile@msn.com

In Pro Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

STEPHAN DEAN and LIZA DEAN, Individually and DBA SUREFILE FILING SYSTEMS.

       Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC.. KAISER FOUNDATION HOSPITALS. and Does 1-50 Inclusive.

       Defendants.

Case No.: 5:22-cv-00278-MCS

**CROSS DEFENDANTS'S, STEPHAN AND LIZA DEAN, NOTICE OF MOTION and MOTION TO DISMISS THE CROSS-COMPLAINT/CLAIM of DEFENDANT and COUNTERCLAIMANT, KAISER FOUNDATION HEALTH PLAN, INC.**

**Date:**     **April 24, 2023**
**Time:**     **9:00 a.m.**
**Courtroom: 7C**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, that on April 24, 2023, at 9:00 a.m.. in Courtroom 7C of the United States District Court located at 350 West First Street, before the hon. Mark Scarsi, Plaintiffs and Cross-Defendants. Stephan and Liza Dean. will. and hereby do move the Court to dismiss the Cross-Claim in its entirety.

This motion is based upon this Notice of Motion: the Memorandum of Points and Authorities submitted herewith: the Declaration of Thomas Stefanelli: the Proposed Order: any supplemental memoranda evidence. the Court's file in this case: and any matters of which the Court may or must take judicial

notice; and on any arguments presented at the hearing of the motion. The parties met and conferred on this motion December 5, 2022.

Date:  March 23, 2023

_____
Stephan Dean, Cross-Defendant
In Pro Per

Dated: March 23, 2023

_____
Liza Dean, Cross-Defendant
In Por Per

Stephan C. Dean and Liza Dean
37187 Bankside Drive #2
Cathedral City, CA 92234
323-314-9692
Surefile@msn.com

In Pro Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

STEPHAN DEAN and LIZA DEAN, Individually )
and DBA SUREFILE FILING SYSTEMS, )
)
      Plaintiffs, )
)
v. )
)
KAISER FOUNDATION HEALTH PLAN, INC., )
KAISER FOUNDATION HOSPITALS, and Does )
1-50 Inclusive, )
)
      Defendants. )

Case No.: 5:22-cv-00278-MCS-KK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CROSS-COMPLAINT**

**PLAINTIFFS and CROSS-DEFENDANTS MEMEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONTO DISMISS THE CROSSCLAIM OF KAISER FOUNDATION HEALTH PLAN, INC. IN ITS ENTIRETY**

## INTRODUCTION

      The Action now before this Court is now a singular question of Contract Law. Have the Deans', doing business as Sure file Filing System, (hereinafter Dean) breached a fully integrated agreement with Kaiser Foundation Health Plan, Inc. (hereinafter Kaiser). Further to that singular

question, additional questions arise. If there has been a breach of the agreement in any respect has Kaiser suffered or sustained damages? Finally, if Kaiser suffered or sustained damages, is it entitled to relief? Although it may now appear as though these questions are easy to resolve (and perhaps they are) getting to this point in time and, in this case, has been a long and tortuous road for all parties but, particularly for the plaintiffs and cross-defendants.

The contract/agreement entered between the parties was inked or signed in 2011. It was and is a bilateral fully integrated Settlement and Release (DOCKET 81 PAGE 8) of all claims known or unknown for all times prior to and after the Effective Date. (DOCKET 94, Exhibit B page 1 and 2.) The agreement was reached because of Dean seeking money owed to him by Kaiser for services rendered. Finally, Kaiser agreed to pay Dean the moneys owed but wanted something more in exchange. It wanted the Dean's unilateral promise to never use its name or trademark in any capacity. Dean would only agree to this for additional consideration.

Now years later, Dean, a duly licensed Data Broker, has made use of Kaiser's name/trademark on his business website. Kaiser in its Crossclaim herein seeks to permanently enjoin Dean from so using its name/trademark and likewise seeks monetary damages. It is this Crossclaim that Dean moves to dismiss in its entirety.

First and foremost, Dean has not breached the Agreement. Second, even if this Court were to find that there has been a breach of the agreement, this Court has noted that Kaiser has not been damaged. Third, even if Kaiser can show or establish damages, small or great, it has compromised any claims it might possess after signing the agreement.

# I

# KAISER IS PRECLUDED FROM SEEKING THE RELIEF

This Court has already found that the Settlement Agreement reached by the parties in 2011 is a fully integrated agreement (Docket 81 page 8). The court further noted, citing Moss Dev. Co. v. Geary, 41 Cal.App.3d 1,9 (1974) ..."[C]ourts are not at liberty to read into a contract language that is demonstrably not there." This court went on, citing Von Cos. Inc. v. U.S. Fire Ins. Co., 78 Cal.App. 4Th 52, 59 "('We do not have the power to create for the parties a contract they did not make and cannot insert language that one party now wishes were there.') (Docket 81 page 7)) It is no longer the Deans seeking to add language to a fully integrated agreement they now wish were there. It is Kaiser seeking language restricting Dean from using its name or logo for marketing purposes, the very language they willfully decided to be omitted.. Declaration of Thomas Stefanelli (Document 94, Exhibit A).

This court has already ruled it does not have the authority to do the very thing Kaiser is seeking. (Docket 81 page 7). Kaiser argued, this court could not insert a term in its motion for summary judgement (Docket 53 -1 page 18) Kaiser cited Dameron Hosp v AAA as being instructive. "Courts will not add a term in which the contract is silent". The courts" function is to determine what, in terms and substance , is contained in the contract, not to insert what has been omitted" Kaiser as in the Dameron case is contending that the Deans have a obligation to abide by language in agreements that are now superseded by the settlement agreement.( Docket 53-1 page 18) In Dameron Hospital, past conduct could not add a new contractual term, so too here . Kaiser cannot add a term restricting the Deans from using their mark for commercial purposes. Thus the court cannot now graft terms that are entirely absent from the Settlement Agreement.

## II

## THE AGREEMENT PRECLUDES ANY DAMAGE CLAIMS

In its order dated November 11/22/22 (Docket 81, pg 22) this Court held the basis for not granting Kaiser for its breach of contract claim. Simply put, in its Motion for Summary Judgment, Kaiser had not shown damages. The settlement agreement is fully integrated and has no legal mechanism in which Kaiser could seek relief for any damages even if it could prove it has sustained them. The fact is the settlement agreement, section B and C, affirm that that both parties compromised any claims they might possess against each other on 3/24/2011 for all times prior and after the effective date. Indeed Kaiser was well aware of potential trademark claims before signing the agreement. Instead of preserving the claim they willfully decided to omit the term. This agreement is doing exactly what was intended by both parties to achieve. Preclude any future claims, including damage claims Kaiser is attempting to insert in the fully integrated agreement.

Again, Dean does not believe it is in breach of contract as the prohibitive or affirmative (Legal Mechanism) language Kaiser seeks to be read into the Agreement cannot be inserted. See Moss Dev. Co. v. Geary and Vons Cos. v. U.S. Fire Ins. Co. supra. "We do not have the power to create for the parties a contract they did not make and cannot insert language one party now wishes were there"

## II.

## KAISER RELEASED ITS CLAIMS AGAINST THE DEANS IN 2011

Kaiser, on March 24, 2011, released all of its claims against the Deans that are pending in this lawsuit. Extrinsic evidence may "be admitted to explain the meaning of a writing when the meaning urged is one to which the contract term is reasonably susceptible or when the contract is ambiguous." Hayter Trucking, Inc. v. Shell W. E&P, Inc., 18, Cal.App. 4Th 1.15 (1993) Dean has submitted herewith the Declaration of Thomas Stefanelli, (DOCKET 94, EXHIBIT A) to establish, among other things, the meaning of a portion of the Settlement Agreement.  The Agreement reads in it relevant part as follows:

3. **Settlement and Releases**. … "shall mutually remise, release, and forever discharge each other … from all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character arising out of or relating to the Dispute and any and all claims that were or could have been asserted relating to and or arising from any of the foregoing, regardless such claims … have arisen  prior to the Effective Date or arise after the Effective Date."

Moreover, paragraph 3 of the Settlement Agreement included a waiver of California Civil Code Section 1542 in bold print. It reads:

"**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**. "

Whereas even if Kaiser could invoke California Civil Code Section 1542 as a basis for its Counterclaim against Dean the simple fact of the matter is this: extrinsic or parole evidence which is permissible for the scope of this Motion **exposes, reveals, and cements the audacity of this claim.**

 Kaiser has sought injunctive relief which this Court has granted and will issue in a separate order. In light of the evidence presented the injunctions would go directly against the Courts ruling that it could not add a term.  If issued this court would be inserting a term in a fully integrated agreement that it

previously ruled it could not do. The evidence presented proves Kaiser released any trademark claims in 2011.


### III

### KAISER ALREADY DISMISSED WITH PREJUDICE ITS PURSUIT OF A PERMANENT INJUNCTION FOR USE AND DISCLOSURE OF PHI IN 2013

The issue regarding seeking injunctive relief regarding use and disclosure of Patient information was dismissed with prejudice in 2013. In 2013, as a consideration of settlement, Kaiser opted to dismiss with prejudice instead of seeking the very injunction they are pursuing now. (Exhibit A, Kaiser Settlement Conference Brief). Kaiser was well aware that the Deans, as lay people, did not have the technical skills to successfully destroy the PHI in their possession. Kaiser pro offered the expert testimony in the 2013 case. (Exhibit B, DECLARATION Richard Albee). Kaisers own attorney said nothing at the settlement conference about the need for forensic wiping as Kaiser had been seeking in their lawsuit seeking a permanent injunction. The reason why is that to continue the litigation, Kaiser would have had to introduce parole evidence, the evidence we are presenting in the Declaration of Thomas Stefanelli (DOCKET 94, EXHIBIT A). This would have exposed Kaiser's release of their trademark claims. Kaiser forfeited any chance of getting injunctive relief regarding the PHI.

Instead, Kaiser opted to circumvent the civil process and set up the Deans to be raided by the FBI. This maneuver allowed them to get the Dean's devices and access to their email accounts without going back to civil court. Kaiser did this by having one of their executives, Vita Willet, contact the Deans pretending to want to settle the situation, but was secretly recording the conversations with Mr. Dean and being coached by an ex-US Attorney. On February 4th, 2014, early in the morning, the Deans' home

was raided. Mr. Dean and his family were forced, by gunpoint, lined up outside by their front door and handcuffed. The Deans small children, were taken out of their beds and lined up with them, scared to death. Mrs. Dean was taken out of the shower and dragged outside, in a bathrobe, handcuffed.

In 2017 the government notified the Deans that no charges were being filed. Their property, computers and devices, were returned to them with all the information still on them. The Deans are agreeable to have this case unsealed and the U.S. Attorney does not object.

## CONCLUSION

For all the reasons discussed herein, the Counterclaim for monetary damages should be Dismissed with Prejudice, the fees awarded Kaiser in the S.L.A.P.P. Proceedings set aside, and any Injunctive Relief not be issued.

Respectfully Submitted, March 23, 2023

_____
Stephan Dean, In Pro Per

_____
Liza Dean, In Pro Per

**EXHIBIT A**

1  THOMAS M. FREEMAN, Cal. Bar No. 109309
   SARAH EDWARDS, Cal. Bar No. 268679
2  MARION'S INN LLP
   1611 Telegraph Avenue, Suite 707
3  Oakland, California 94612-2145
   Telephone: (510) 451-6770
4  Facsimile: (510) 451-1711
   Email: tmf@marionsinn.com
5  Email: se@marionsinn.com

6  Attorneys for Plaintiffs Kaiser Foundation
   Health Plan, Inc. and Kaiser Foundation Hospitals

7

8

9                   SUPERIOR COURT OF CALIFORNIA

10            COUNTY OF RIVERSIDE - PALM SPRINGS

11

12  KAISER FOUNDATION HEALTH PLAN, INC.  )   No. INC 1207224
    and KAISER FOUNDATION HOSPITALS,     )
13                                       )   Assigned to Hon. David M. Chapman
                Plaintiffs,              )
14                                       )   Dept. PS-2
         v.                              )
15                                       )   SETTLEMENT CONFERENCE
    STEPHAN CHRISTOPHER DEAN, LIZA       )   STATEMENT OF PLAINTIFFS
16  DEAN, DBA SUREFILE FILING SYSTEMS,   )   KAISER FOUNDATION HEALTH
    and DOES 1-10, inclusive,            )   PLAN, INC. and KAISER
17                                       )   FOUNDATION HOSPITALS
                Defendants.              )
18                                       )   Complaint filed: October 12, 2012
                                         )
19

20                                           Date: September 13, 2013
                                             Time:  10:00 a.m.
21

22         Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals submit the

23  following settlement conference statement.

24         A.    The Deans' Work for Kaiser

25         In the fall of 2008, Stephan and Liza Dean began providing services to Kaiser at its

26  Moreno Valley facility following Kaiser's acquisition of the Moreno Valley Community

27  Hospital. Initially, Kaiser needed a vendor to deactivate, catalog, and box old Moreno Valley

28  Community Hospital medical records that were located at the facility.

                                              1
PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT                    Case No. 1207224

                        EXHIBIT A

1     Beginning in August 2009, the Deans began a project to transport, catalog and box old

2  Moreno Valley Community Hospital records for Kaiser. The Deans provided these services from

3  a warehouse facility in Indio.  From time-to-time, employees in Kaiser's Medical Records

4  Department sent requests to the Deans to pull medical records for delivery to Kaiser.  Contrary to

5  Kaiser's policies and unbeknownst to others at Kaiser at the time, some of those requests were

6  sent via unencrypted e-mail and included PHI.

7     The Deans and Kaiser entered into a written service agreement dated March 12, 2010, for

8  the West Los Angeles area, for the purpose of medical record storage and deactivation (the "West

9  Los Angeles Agreement"). Pursuant to that agreement, the Deans agreed, among other things, to

10 remove, prepare, deactivate, transport, store, and retrieve upon request medical charts for the

11 Kaiser Permanente West Los Angeles Medical Center..

12    By June of 2010, the Deans had completed the services requested by Kaiser.  A notice of

13 termination was sent to Stephan Dean by Kaiser, along with a request to return all of the medical

14 records. The Deans refused to allow Kaiser or its patients and members access to their medical

15 records, or to return them, because of a dispute concerning payment for their services. Therefore,

16 in July 2010, Kaiser notified the Deans that they were in breach of their agreements with Kaiser,

17 and that they should (1) comply with patient requests for medical records, (2) permit Kaiser to

18 inspect Sure File's warehouse, and (3) arrange for transfer all medical records relating to Kaiser

19 patients and members.

20    Kaiser and the Deans negotiated a transfer agreement ("Sure File Transfer Agreement") to

21 effect the transfer of possession of all of the Kaiser records in the Deans' custody to Kaiser. The

22 Sure File Transfer Agreement was signed by Stephan Dean on July 23, 2010.  Kaiser reasonably

23 understood at the time that the Deans had returned to Kaiser all Kaiser member or patient

24 records. Unbeknownst to Kaiser, however, the Deans retained possession of email and other

25 electronic records with PHI of Kaiser members and patients.

26  B.    The March 2011 Settlement Agreement

27    At the time of the execution of the Sure File Transfer Agreement, Kaiser was aware that

28 the Deans claimed that they were owed additional compensation for work they done for Kaiser.

2

1    To resolve the dispute over compensation for the Deans' services, Kaiser and Stephan Dean

2    executed a confidential settlement agreement ("Settlement Agreement") in March 2011. Kaiser

3    agreed to pay the Deans $110,000 to resolve their Dispute. The Settlement Agreement recited

4    that Kaiser's payment to the Deans would be "in full and final settlement and compromise of any

5    claims [the parties] might possess against the other, including without limitation the Dispute and

6    any counterclaims and allegations related to or in connection with the Dispute." It also stated that

7    Kaiser and Sure File agreed that "no additional money shall be due from any party, for any

8    reason whatsoever, for any obligation incurred by any party to any other party in connection with

9    the Dispute." The Settlement Agreement contained a general release and waiver of Cal. Civ.

10    Code § 1542, extending only to known and unknown claims "with respect to the Dispute."

11        C.    Stephan Dean's Post-Settlement Agreement Conduct

12        Soon after the Settlement Agreement was executed, in the summer of 2011, Stephan Dean

13    informed Kaiser for the first time that he was *still* in possession of email from Kaiser which

14    contained PHI, as well as other electronic records with PHI of Kaiser members and patients.

15    Kaiser immediately demanded that the Deans return or destroy all the electronic PHI in their

16    possession.

17        Kaiser also provided the Deans with instructions on how to remove the PHI from his

18    computers and email account(s) and offered to have the records removed by Kaiser's IT experts

19    or to engage a third-party IT security expert at Kaiser's cost to assist the Deans in this endeavor.

20    The Deans refused all these offers unless Kaiser paid them additional compensation. Despite

21    repeated requests from Kaiser to return or destroy the electronic PHI and certify having done so,

22    as required by the terms of their Business Associate Agreement with Kaiser, the Deans refused

23    and instead made repeated demands to Kaiser for additional payment. The Deans also refused to

24    provide access to the electronic PHI so that Kaiser could confirm what PHI relating to Kaiser's

25    members and patients Dean had in his possession, or recover or destroy it. Dean also refused to

26    follow instructions provided to him from Kaiser on how to remove and destroy any electronic

27    PHI still saved on the Deans' computers or other electronic devices or in their email account.

28    ///

PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT                    Case No. 1207224

EXHIBIT A

1   D.   Previous Settlement Discussions

2       Despite Kaiser's belief that it had fully compensated the Deans for their services and

3   despite Kaiser's belief that the Deans had no right to possess the PHI of Kaiser patients and

4   members, Kaiser engaged in negotiations with the Deans for more than a year to secure the return

5   or destruction of the PHI.

6       Kaiser initially offered the Deans $100,000 in exchange for their agreement to provide all

7   PHI in their possession and certify such delivery or destruction under oath.  In response the

8   Deans demanded $8,000,000. Ultimately, Kaiser offered the Deans $250,000 conditioned upon

9   execution of a comprehensive confidential settlement agreement that required, among other

10  things, that the Deans certify under oath the return or destruction of all PHI in their possession

11  and allow inspection of their computers and email accounts to assure deletion of the PHI. The

12  Deans demanded $650,000 for this agreement which Kaiser rejected.

13      When Kaiser refused to accede to the Deans' exaggerated demands for additional

14  payments before they would agree to return or destroy the PHI of Kaiser members and patients in

15  their possession,  the Deans engaged in tactics designed to scare Kaiser into acceding to their

16  demands for additional compensation.  For instance, the Deans claimed that Kaiser's electronic

17  PHI was at risk of being stolen because it was stored on computers in the Deans' garage.  The

18  Deans told a reporter for the San Francisco Financial Times that the garage door had been left

19  open accidentally, which could result in a loss of Kaiser's PHI. The Deans also threatened to

20  contact Kaiser members and patients.

21  A.   The Litigation

22      Because of the Deans' reckless conduct and their refusal to cooperate with Kaiser's

23  requests for the return or destruction of the Kaiser electronic PHI, or Kaiser's offers to have the

24  PHI removed from their computers by either Kaiser IT professionals or independent third-party

25  IT experts at Kaiser's expense, Kaiser was forced to file this lawsuit against the Deans on

26  October 12, 2012, to secure the protection of its members' and patients' PHI.[1]  Kaiser requested

27

28  _____
    [1] During the course of negotiations to secure the return of the PHI of its members and patients Mr. Dean
    repeatedly told counsel for Kaiser that the Deans had "nothing to lose" and were not concerned about Kaiser's
    threats to pursue litigation to secure the return of the PHI of its members and patients. Kaiser confirmed that the

4

EXHIBIT A

1  and obtained a temporary restraining order against the Deans from this Court on October 17,

2  2012, and subsequently moved for and was granted a preliminary injunction on January 10, 2013.

3       F.    <u>The Court's July 29, 2013 Ruling</u>

4       In its ruling on Defendants' motion for summary judgment the Court determined that the

5  Settlement Agreement superceded all prior agreements between the parties and resolved all

6  disputes between the parties.

7       G.    <u>Kaiser's Position Re Settlement</u>

8       Ignoring for purposes of this settlement conference whether the Transfer Agreement and

9  the  Settlement Agreement were procured by fraud on the part of the Deans by their failure to

10  return all PHI to Kaiser and whether Kaiser will file an amended complaint, it cannot reasonably

11  be disputed that Kaiser owes the Deans nothing further for their services and that the Deans have

12  settled or otherwise waived any claim against Kaiser.  Thus, continuing demands from the Deans

13  for hundreds of thousands of dollars are baseless.  Kaiser is not willing to consider such demands.

14       However, in an effort to bring this litigation to a conclusion Kaiser is willing to discuss a

15  nominal settlement payment to the Deans in exchange for either a permanent injunction

16  concerning the use and disclosure of any Kaiser PHI, or an agreement by the Deans to surrender

17  their computers and allow inspection of their email accounts to assure that all Kaiser PHI has

18  been removed.

19

20  Dated: September 5, 2013        MARION'S INN LLP

21                             Thomas M. Freeman

22                             Sarah Edwards

23                             By _____

24                                Thomas M. Freeman

25                 Attorneys for plaintiffs Kaiser Foundation Health

26                 Plan, Inc. and Kaiser Foundation Hospitals

27

28

Deans have numerous judgment liens and tax liens pending against them.

5

PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT         Case No. 1207224

*EXHIBIT A*

1

**PROOF OF SERVICE**

2

3        I, the undersigned, state:

        I am over the age of eighteen and not a party to this action.  My business address is 1611
4   Telegraph Avenue, Suite 707, Oakland, California 94612-2145, which is located in Alameda
    County.
5

    On September 6, 2013 I served the following document(s):
6

7   PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT

8

9      __X__   **BY E-MAIL**.  I am familiar with the business practice at my place of business for collection
    and processing of correspondence for delivery by electronic mail.  Correspondence so collected and
10  processed is sent from an e-mail of an employee of this firm to the e-mail address(es) of the recipient(s)
    listed below.

11

    Stephan Christopher Dean                    Thomas M. Stefanelli, Esq.
12  Liza Dean                                   Law Office of Thomas M. Stefanelli
    surefile@msn.com                            lawstef7771@yahoo.com
13

14        I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.
15

16  Dated: September 6, 2013

17                                          *Helen Ganski*
                                            Helen Ganski
18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

EXHIBIT 4

**EXHIBIT B**

1   THOMAS M. FREEMAN. Cal. Bar No. 109309
    SARAH EDWARDS, Cal. Bar No. 268679
2   MARION'S INN LLP
    1611 Telegraph Avenue, Suite 707
3   Oakland, California 94612-2145
    Telephone:  (510) 451-6770
4   Facsimile:  (510) 451-1711
    Email: tmf@marionsinn.com
5   Email: se@marionsinn.com

6   Attorneys for Plaintiff Kaiser Foundation
    Health Plan, Inc. and Kaiser Foundation Hospitals
7

8                    SUPERIOR COURT OF CALIFORNIA

9                  COUNTY OF RIVERSIDE - INDIO BRANCH

10  KAISER FOUNDATION HEALTH PLAN, INC. )   No. INC 1207224
    and KAISER FOUNDATION HOSPITALS,    )
11                                      )   Assigned to Hon. Harold W. Hopp
                                        )
12         Plaintiffs,                  )   DECLARATION OF RICHARD L.
                                        )   ALBEE
13      v.                              )
                                        )   Date:   January 10, 2013
14  STEPHAN CHRISTOPHER DEAN, LIZA      )   Time:   8:30 a.m.
    DEAN, DBA SUREFILE FILING SYSTEMS,  )   Dept.:  2G
15  and DOES 1-10, inclusive,           )
                                        )   Complaint filed: October 12, 2012
16         Defendants.                  )   Trial date:  Not set
    _____)

17

18

19

20

21

22

23

24

25

26

27

28

_____
DECLARATION OF RICHARD ALBEE                           Case No.  INC 1207224

EXHIBIT B

## DECLARATION OF RICHARD L. ALBEE

I, RICHARD L. ALBEE, a Principal of DataChasers® Inc., declare:

1. I am the Founder and President of DataChasers® Incorporated, a forensic computer evidence discovery company, which provides computer hard drive imaging; restores hidden, deleted and/or lost files, images and data; establishes the dates that files are created, modified and deleted; tracks Internet history; recovers e-mail; investigates cases pertinent to intellectual property, trade secret, copyright, family law, fraud, employment disputes, unauthorized computer use, analysis of the computer use, and other computer related cases; supplies special master services, expert witness testimony and litigation support; maintains a full-service state-of-the-art computer laboratory; and provides related services.

2. I am an honorably retired police lieutenant with twenty-nine years of service, including four years as the operations lieutenant of the detective division, where I supervised all major crime investigations including the computer forensics and fraud investigations

3. I have a Masters degree in Public Administration from the University of Southern California (USC), am a graduate of the Command College, Peace Officers Standards of Training (P.O.S.T.). I have a Bachelor of Science degree in Police Science and Administration (CSULA), an Associate of Arts degree in Police Science. I hold approximately eight (8) professional certifications specific to computer forensics, and I have a professional affiliation/membership in twelve (12) professional organizations.

4. I am a Certified Forensic Computer Examiner (CFCE) through the International Association of Computer Investigative Specialists (IACIS), which is the premier training organization for law enforcement worldwide. I have authored published dozens of articles related to computers and computer forensics, and have spoken at more than forty prestigious training conferences both here and abroad, and I have been consulted by best-selling authors for technical advice.

Exhibit B

5. I have qualified and testified as an expert witness approximately forty-two (42) times in the area of computer forensics, and have served in the capacity of special master on many occasions as well as being a special master in Federal Court.

6. DataChasers, via my direct work product and/or under my direction/control/supervision has been consulted in literally hundreds of cases involving many hundreds, if not thousands, of hard drives. DataChasers' clients include major national corporations, many of which are in the technology industry. The items requested for examination and/or information may include, but not be limited to files (e.g., Word documents, Excel spreadsheets, and similar type files), graphics (e.g., pictures), e-mails, etc., the date codes associated with those files (e.g., when the files were created, modified, and last accessed), and the path of the files (where the files are located on the hard drive).

7. An investigator, including a forensic computer examiner in California, performing any investigation for the purpose of obtaining information with reference to those tasks defined in the CA Business and Professions Code section 7521 (which include the investigation of crimes, ...damage or injury to persons or property, securing evidence to be used before any court, board, officer, or investigating committee, etc.) is required to be a California licensed private investigator. I am a California licensed private investigator (license number PI-20551), as defined in CA B&P Code section 7520, and the qualified manager and owner of DataChasers, Inc.

8. All of DataChasers technicians are trained and well-certified in the forensic examination of computers for the purpose of recovering data pertinent to the litigation process, including deleted data associated with but not be limited to files (e.g., Word documents, Excel spreadsheets, and similar type files), graphics (e.g., pictures), e-mails, etc., and rendering expert opinion on how the computer was used.

9. Attached hereto is a true and accurate copy of my complete resume.

EXHIBIT 13

10. DataChasers® Inc. has been retained by Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively "Kaiser") through their attorneys at Marion's Inn LLP in this action.

11. I have personal knowledge of the matters set forth in this Declaration and if called upon as a witness I would and could competently testify to them.

12. I understand that the computer(s) owned by Defendants are at issue, as well as the data that may be stored on their computer(s) or on ancillary items devices and email with personal health information or other confidential personal information that may have been sent to Defendants or received by Defendants from individuals at Kaiser.

13. I have been told and believe that Defendants have objected to production of their computer(s) and ancillary items devices and email accounts on the grounds of invasion of their privacy and destruction or harm to their personal files.

14. This is not a reasonable objection by virtue of DataChasers' reputation and experience, process, validation of data, authenticity of data, and authority (please see below).

15. REPUTATION AND EXPERIENCE:  DataChasers is in its second decade of professional operation.  Through those years DataChasers has imaged many hundreds of hard drives, possibly thousands, without the corruption of data on a single device.

16. PROCESS:  DataChasers prescribes to industry standard practices in the use of both software and hardware. Specifically, hardware physical write-blockers, which prevent the corruption of data on the source hard drive; and software imaging programs designed for the protection of forensic data.

17. VALIDATION:  All imaged data is validated as an accurate bit-stream image through MD5 *hash* algorithm validation.  A hash value is a mathematical algorithm that creates a type of data signature for the comparison of multiple pieces of media (hard drives, files, etc.).  To a certainty of $2^{128}$ (several times greater than the certainty of DNA), two pieces of media with the same hash value must be totally and completely identical.

EXHIBIT 13

18. **AUTHENTICITY OF DATA**:  The industry standard for the examination of ESI (Electronically Stored Information) is to examine a forensically sound image of the original media.  It is impossible to validate the authenticity of the ESI once that original data has been altered.  Further, without specific knowledge and control, it is not possible for a forensic computer examiner to later testify as to the authenticity of the data that was examined.

19. For an examination of the data on this these computer's to be reasonably successful, it requires that the items to be examined be (1) the original, unaltered media, or (2) an exact forensic copy, known as a bit-stream image, of the data, regardless of the type of media upon which the data resides.

20. The type of media and the items to be imaged and produced as described above include, but are not limited to any and all computers, media, machines, devices and equipment, which shall include all hard drives, hardware, directories and files, including Recovery Bin or Recycle Bin information, all data files, all servers, all logs, all audit trails, all access records, all access control lists, all backup software, all encryption software, all passwords and all encoding and decoding information.

21. The items to be imaged and produced as described above shall also include any and all media storage items, whether installed within the computer or otherwise, and thus described as "removable" media, which includes but are not limited to any and all media storage devices, e.g., external hard drives, floppy discs, zip discs, CD discs, DVD discs, flash memory devices (commonly called "thumb drives"), etc.

22. Such computers, media, machines, devices and equipment are to be subjected to a full forensic computer examination, full forensic image of hard drives and memory, clone-copying, full investigation of trace artifacts, latent evidence, comparative analysis of the data, date codes, links and related corroborative evidence within the computer's, media, machines, devices and equipment.

23. The examination of all items will be conducted at the facilities of DataChasers® Inc. located in Riverside, California.   Additionally, DataChasers® Inc. will also be allowed to make

4

EXHIBIT B

a full and complete backup for examination purposes and archiving of all computers, media, machines, devices, and equipment.

24. It is always preferable do all processing and examinations in our lab rather than at a remote facility. The reasons for this are: (1) The efficiency of the examination process may be compromised by attempting a full forensic examination at a remote facility, and (2) the cost is always significantly increased by operating at a remote facility. These issues are addressed separately below.

25. The efficiency of the examination process attempted at a remote facility is at risk at all stages of the process for several reasons. (1) The transportation of equipment, much of it delicate computer equipment, lends an inherent risk to damage, and therefore rendering a needed piece of equipment useless at the scene of the examination. (2) Not all possible eventualities can be anticipated for working in the field, away from a fully equipped lab; therefore, if unanticipated equipment or software demands are encountered it is always more difficult, if not impossible, to remedy the situation in an unfamiliar environment. (3) Security is always an issue: the security of the evidence, the security of the equipment, and often the security of the examiners if not actually in a secure environment. And (4) we have received numerous pieces of evidence by couriers such as FedEx or private courier, and in the several years of operation have never encountered a problem.

26. The cost factor is always significantly increased by operating away from our familiar facilities. (1) Travel expenses (including travel time, mileage, often air fare, lodging, per diem, and transportation rentals, etc.) must be added to the cost of the engagement. (2) The entire process takes more time, and thus is more costly to the client. There is also setup time, and probably break down time each day, which is not encountered when working in our own lab, as equipment is rarely left unsecured. The overall time consideration is a big factor; it just takes longer to do the same job when we're not in our own facilities.

27. For the purpose of production of these items, all computers, media, machines, devices, and equipment shall be preserved for production in such a manner as to retain all

EXHIBIT B

computer evidence, and protect any all media from deletion, alteration, or corruption until after said examination.

28. One of the problems I frequently face is distinguishing between relevant data stored on computer systems that are the subject of search, and irrelevant data that may or may not be privileged. I can avoid the production of irrelevant or confidential data by several methods: (1) avoiding the review of files obviously not relevant; (2) confining search criteria to the scope of the defined search; (3) performing keyword searches, designed to capture only relevant data.

29. Further, DataChasers® is familiar with working, and has previously worked, under strict parameters for discovery, both with and without formal disclosure or protective orders. In the course of these examinations I have not, nor would I ever, intentionally violate the terms of an Order or agreement.

30. In this case if we are permitted to conduct an inspection of Defendants' computer(s) and ancillary devices and email accounts our search would focus on (1) any email, including attachments, sent to or received from anyone at Kaiser with an email hash tag containing either kp.org, kfh.org, kpic.org, tpmg, org or scpmg.org; and (2) any files that contain any email, including attachments, sent to or received from anyone at Kaiser with an email hash tag containing either kp.org, kfh.org, kpic.org, tpmg, org or scpmg.org; and (3) any files that contain the following keywords: Kaiser, Permanente, MRN, or SSN.

31. If permitted by an Order of this Court we would be prepared to delete any email or file that we identified. To assure that the email was properly and completely removed from the Defendants' email account we would take the steps necessary to confirm deletion.

32. These steps would largely be determined upon the manner in which the email had been stored, the email protocol used (e.g., Outlook) and may include but not limited to: (1) examination of known email accounts; (2) the location(s) on the computer in which email is commonly held; and (3) possibly rebuilding the defendant's hard drive, loading only his programs and personal data, and thus omitting any possibility of him retaining confidential data.

EXHIBIT B

33. To assure that the file was properly and completely removed from the Defendants' computer(s) and/or ancillary devices(s) we may take additional steps, depending on the efforts described in the above paragraph, and what efforts are taken.  These steps may include, but not be limited to: (1) deleting and reinstalling email programs; (2) wiping slack and unallocated space on the hard drive; and (3) keyword search for known and suspected email protocols.

34. I have spoken to Tom Freeman, counsel for Kaiser in this case.  He has assured me of his willingness to work in good faith to prevent the production to him of any private information contained on Defendants' computer(s), ancillary devices or email accounts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 4th day of _____, 20 15 at Riverside, California.

Richard L. Albee

NOTARY:

State of California, County of _____

On (date)_____, before me _____

personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument; the person, or the entity upon behalf of which the person acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Place Notary Seal Above

Signature _____

Signature of Notary Public

7

